**IN THE COURT OF APPEALS OF IOWA**

No. 21-0004
Filed May 12, 2021

**IN THE INTEREST Z.S.,**
**Minor Child,**

**J.S., Mother,**
        Appellant.
_____


Appeal from the Iowa District Court for Scott County, Korie Talkington, District Associate Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Rebecca Ruggero, Davenport, attorney and guardian ad litem for minor child.


Considered by Bower, C.J., Doyle, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her child, Z.S.[1] On appeal, she argues termination is not in the child's best interest and seeks additional time to work toward reunification. We affirm.

**I. Scope and Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Following our three-step process, we consider any additional claims

---

[1] The court also terminated the rights of Z.S.'s other mother. She does not appeal.

brought by the parent. *See In re T.P.*, No. 19-0162, 2019 WL 3317346, at *2 (Iowa Ct. App. July 24, 2019).

## II. Discussion

### A. Statutory Grounds

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (e), (f), and (*l*) (2020). And the mother does not challenge the statutory grounds authorizing termination. So we move to the next step in our analysis.

### B. Best Interest

The mother does challenge the juvenile court's determination that termination is in Z.S.'s best interest. In determining Z.S.'s best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We agree with the juvenile court that Z.S.'s best interest requires termination. We look to the past for clues of what we may expect in the future. *Cf. In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). The past shows the mother's unresolved substance-abuse issues have negatively impacted Z.S. For example, shortly after removal, when he was just five years old, Z.S.'s hair stat test was positive for methamphetamine. Over the life of this nineteen-month-long case, the

mother either tested positive or admitted to methamphetamine use seven times. And as recently as October 2020, the mother admitted to daily methamphetamine use. Her longest period of sobriety lasted just ninety days, and she has not successfully completed a substance-abuse treatment program. The mother has also struggled with her mental health. She is homeless and admits to breaking into garages to get out of the elements when it is cold outside. So when looking to the mother's past to predict her future, we envision a future filled with substance abuse, instability, and uncertainty, which is not conducive to caring for a child.

Z.S. deserves more stability and certainty than the mother can provide. His therapist reports that he is "worn out from the experience of being unsure which direction his life will be. He is tired of being a kite without a string." It is clear from the record that Z.S. desperately needs permanency. This can be achieved through termination. *See In re S.J.*, No. 20-1430, 2021 WL 811162, at *1 (Iowa Ct. App. Mar. 3, 2021) ("[The child] deserves stability, permanency, and predictability, which she can only get through termination."). Moreover, he is integrated into his foster family; he has his own bedroom and positive relationships extending to the foster family's extended family. "He has expressed several times that he loves it there." And the foster family is interested in serving as long-term caregivers for Z.S. *See* Iowa Code § 232.116(2)(b).

So we conclude termination is in Z.S.'s best interest and move to our next step.

### C. Exceptions to Termination

We consider whether section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an

exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception, we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

In arguing termination is not in Z.S.'s best interest, the mother points to her strong bond with Z.S. We interpret this as the mother attempting to invoke section 232.116(3)(c), which permits the court to preclude termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child bond." But we think the mother overstates her current bond with Z.S.

The record shows the bond between mother and child has deteriorated over time. Z.S. has penned notes expressing his anger and sadness at his mother's inability to take the steps necessary for reunification. He experiences anxiety before and after visits with the mother. And Z.S. expressed to his therapist that "[h]e does not understand why he should give up his play time with his friends to visit [the mother], when she is not giving anything up to get him back." When the mother exercises visitation with Z.S., visits are sometimes terminated because the mother berates Z.S. until he begins to cry and has to be escorted to another room. At times, he then states he does not want to visit with the mother anymore. This conduct is not indicative of a strong, healthy parent-child bond. Therefore, we find the mother's bond with Z.S. is not so strong to preclude termination and decline to apply this permissible exception.

**D. Additional Time**

At the conclusion of her recitation of relevant facts, the mother requests additional time to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). In doing so, the juvenile court essentially must "predict what the future holds for [the mother]." *See In re A.M.*, No. 20-1378, 2021 WL 377103, at *3 (Iowa Ct. App. Feb. 3, 2021).

The mother claims her progress was hindered by necessary modifications to services and visitation due to the COVID-19 pandemic. But she claims "[s]he has continued to make attempts at treatment and as services re-open in the post-Covid world, [she] believes she will be able to successfully reunify." We disagree. As we have stated before, "Life is unpredictable. Parents must adapt to unplanned situations and overcome unexpected challenges. We will not delay permanency for the child[], [under these facts,] simply because of unexpected changes in services offered to the mother." *In re E.A.*, No. 20-0849, 2020 WL 4498164, at *2 (Iowa Ct. App. Aug. 5, 2020). And like in *E.A.*, this case began long before the pandemic; Z.S. was removed from the mother's care back in May 2019, well before COVID-19 began to impact services. *See id.*

> Yet the mother made little progress during that time. This not a parent whose hard work placed her on the threshold of reunification only to be thwarted by a once-in-a-lifetime event. This is a parent who was given ample time to gain the skills necessary for

reunifications but simply failed to progress, pandemic or no pandemic.

*Id.* So we do not grant the mother any additional time to work toward reunification.

## III. Conclusion

Termination is in Z.S.'s best interest. The parent-child bond is not so strong to preclude termination. And the mother should not be given additional time to work toward reunification. Therefore, we affirm the termination of the mother's parental rights.

**AFFIRMED.**